IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| DRIVELINE SYSTEMS, LLC, )<br>an Illinois limited liability company, )<br>   )<br>   Plaintiff, )<br>   )<br>vs. )<br>   )<br>ARCTIC CAT, INC., )<br>a Minnesota corporation, )<br>   )<br>   Defendant. ) | NO. 08-C-50154<br><br>**VERIFIED ANSWER AND**<br>**AFFIRMATIVE DEFENSES** |

Defendant, ARCTIC CAT INC., a Minnesota corporation (hereinafter referred to as "ARCTIC CAT"), by its attorneys, JOHN J. HOLEVAS AND MARC C. GRAVINO OF WILLIAMSMCCARTHY LLP, for its Answer and Affirmative Defenses to the Complaint of plaintiff, DRIVELINE SYSTEMS, LLC, an Illinois limited liability company (hereinafter referred to as "DRIVELINE"), states as follows:

## COUNT I

### Open Account

1. Driveline is an Illinois limited liability company which maintains its principal place of business at 6421 Material Avenue, Loves Park, Illinois, 61111.

**Answer**: ARCTIC CAT admits the allegations in paragraph 1.

2. Arctic Cat is a Minnesota corporation which maintains a place of business at 600 Brooks Avenue South, Thief River Falls, Minnesota, 56701.

**Answer**: ARCTIC CAT admits the allegations in paragraph 2, and corrects its street address as 601 Brooks Avenue South.

3. Between March, 2007 and February, 2008, Driveline sold and delivered to Arctic Cat, at its request, on an account various goods manufactured by Driveline in Winnebago County, Illinois, including, but not limited to, axles, rotors, shafts, and tie rods.

**Answer**: ARCTIC CAT admits that during the time period alleged in paragraph 3 that DRIVELINE sold and delivered to ARCTIC CAT various products delineated in paragraph 3, but further states that plaintiff refused to deliver certain of those products as requested by ARCTIC CAT, and failed to deliver product in accordance with the agreed upon terms and conditions.

4. Between March, 2007 and February, 2008, Driveline forwarded to Arctic Cat invoices for the goods sold and delivered by Driveline to Arctic Cat, photocopies of which are attached hereto as Group Exhibit A and hereby incorporated by reference as though fully set forth herein (hereinafter collectively referred to as "Invoices").

**Answer**: ARCTIC CAT admits that during the time periods alleged in paragraph 4, DRIVELINE forwarded to ARCTIC CAT certain invoices for goods sold and delivered, but has insufficient information to admit or deny whether each invoice attached in Group Exhibit A are for goods sold and delivered, and demands strict proof thereof.

5. Driveline provided Arctic Cat a copy of its Terms and Conditions of Sale with each of the Invoices a photocopy of which Terms and Conditions are attached hereto as Exhibit B and hereby incorporated by reference as though fully set forth herein (hereinafter referred to as "Terms and Conditions").

**Answer**: ARCTIC CAT denies that any purported terms and conditions evidenced by Exhibit B of plaintiff's Complaint were accepted by ARCTIC CAT and affirmatively states that the terms and conditions regarding the parties' business relationship were governed by those submitted by ARCTIC CAT.

6. Arctic Cat is indebted to Driveline on an account for certain goods sold and delivered by Driveline to Arctic Cat at Arctic Cat's request between March, 2007 and February, 2008 in the amount of One Hundred Eight-Two Thousand Two Hundred Thirty-Four and 05/100 Dollars ($182,234.05) as is more fully described upon the Invoices.

**Answer**: ARCTIC CAT denies the allegations in paragraph 6.

7. Arctic Cat promised to pay Driveline the amount set forth upon the Invoices.

**Answer**: ARCTIC CAT denies the allegations in paragraph 7.

8. Although often requested to do so, Arctic Cat has failed and refused, and still fails and refuses, to pay the amount of Invoices or any part thereof.

**Answer**: ARCTIC CAT admits that Driveline has made certain demand for payment but denies that it owes Driveline and monies, and denies the remaining allegations in paragraph 8.

9. Driveline has been damaged by reason of Arctic Cat's failure to pay the amount of the Invoices in the amount of One Hundred Eight-Two Thousand Two Hundred Thirty-Four and 05/100 Dollars ($182,234.05).

**Answer**: ARCTIC CAT denies the allegations in paragraph 9.

10. Pursuant to Paragraph 8 of the Terms and Conditions, Driveline is entitled to reasonable collection costs, including attorneys' fees, for Arctic Cat's failure to pay the balance due and owing reflected upon the Invoices.

**Answer**: ARCTIC CAT denies the allegations in paragraph 10.

WHEREFORE, and by reason of the foregoing, ARCTIC CAT moves this Court for an Order dismissing Count I of plaintiff's Complaint and for the recovery of its costs.

## COUNT II

### Breach of Supply Contract for Specially Manufactured Goods

1-10. Driveline repeats and realleges Paragraphs 1 through 10 of Count I of its Complaint as Paragraphs 1-10 of this Count II of its Complaint as though fully set forth herein.

**Answer**: ARCTIC CAT adopts and incorporates by reference its answers to paragraphs 1-10 of Count I as its answer to paragraphs 1-10 of this Count II.

11. During the course of the business relationship between Driveline and Arctic Cat, Driveline provided considerable engineering support to Arctic Cat and developed and manufactured goods with specifications uniquely suited to Arctic Cat's needs, including, without limitation, axles, outer tie-rods, inner tie-rods, shift shafts, and steering stops.

**Answer**: ARCTIC CAT admits that DRIVELINE provided certain goods with specifications provided to DRIVELINE by ARCTIC CAT, for certain products listed in paragraph 11, but denies the remaining allegations in paragraph 11.

12. Prior to January, 2006, Arctic Cat would send to Driveline individual purchase orders and scheduling agreements for goods manufactured by Driveline, and Driveline would deliver goods to Arctic Cat pursuant to the terms of the purchase orders and scheduling agreements.

**Answer**: ARCTIC CAT admits that prior to January, 2006 and subsequent to that date, DRIVELINE delivered certain goods to ARCTIC CAT, but denies that any alleged forecast scheduling agreement was a legally binding agreement, and further affirmatively states that DRIVELINE refused to deliver certain other goods ARCTIC CAT had requested. ARCTIC CAT denies the remaining allegations of paragraph 12.

13. On or about November 20, 2006, Driveline and Arctic Cat entered into a fifty-two (52) week schedule ("Supply Contract") for the type and quantity of goods Arctic Cat would purchase from Driveline each week for the next fifty-two (52) weeks, a photocopy of which Supply Contract is attached hereto as Exhibit C and hereby incorporated by reference as though fully set forth herein.

   **Answer**: ARCTIC CAT denies the allegations in paragraph 13.

14. Thereafter, Driveline planned, manufactured, and delivered goods to Arctic Cat based on the Supply Contract, the Terms and Conditions of the open account, and the course of dealing between the parties and was generally required to deliver to Arctic Cat goods ordered by Arctic Cat within seven (7) days of receiving a release from Arctic Cat which would specify, in pertinent part, the goods to be delivered by Driveline to Arctic Cat.

   **Answer**: ARCTIC CAT denies the allegations in paragraph 14.

15. Upon Arctic Cat's request and agreement by the parties, Arctic Cat and Driveline would, from time to time, modify the Supply Contract to reflect Arctic Cat's demand for the goods.

   **Answer**: ARCTIC CAT denies the allegations in paragraph 15.

16. In order to deliver goods to Arctic Cat in a timely fashion pursuant to the Supply Contract, Driveline was required to order materials and manufacture the goods months before any scheduled delivery date.

   **Answer**: ARCTIC CAT denies the allegations in paragraph 16.

17. Arctic Cat was aware that Driveline required reasonable notice to plan for and manufacture the custom-made goods for Arctic Cat in accordance with the Supply Contract.

   **Answer**: ARCTIC CAT denies the allegations in paragraph 17.

-6-

18. On or about February 15, 2008, Arctic Cat terminated its contractual relationship and the Supply Contract with Driveline.

**Answer**: ARCTIC CAT admits that on or about February 15, 2008, it terminated its business relationship with DRIVELINE, but denies the remaining allegations in paragraph 18.

19. At the time of Arctic Cat's termination, the total value of the custom-made goods manufactured by Driveline for Arctic Cat and the raw materials purchased by Driveline to manufacture such goods for Arctic Cat, in performance of the Supply Contract, was as follows:

| | |
|---|---|
| Finished Goods: | $1,505,003.00 |
| Work in Progress: | $ 148,747.47 |
| Raw Materials: | $2,295,746.00 |

**Answer**: ARCTIC CAT denies the allegations in paragraph 19.

20. The goods manufactured for Arctic Cat by Driveline pursuant to the Supply Contract and the raw materials ordered by Driveline so as to manufacture goods for Arctic Cat are not suitable for sale to others in the ordinary course of Driveline's business, because the specifications for the goods are uniquely suited to Arctic Cat's needs.

**Answer**: ARCTIC CAT denies the allegations in paragraph 20.

21. By agreement and pursuant to the course of dealing between the parties, Driveline was entitled to reasonable notice of termination of the Supply Contract.

**Answer**: ARCTIC CAT denies the allegations in paragraph 21.

22. Arctic Cat breached the Supply Contract by failing to provide Driveline reasonable notice of termination of the Supply Contract and failing to purchase from Driveline the specially manufactured goods and the raw materials purchased by Driveline in reliance upon the Supply Contract.

**Answer**: ARCTIC CAT denies the allegations in paragraph 22.

-7-

23.     Driveline has been damaged by the breach of the Supply Contract by Arctic Cat in the amount of $3,949,496.47 representing the goods specially manufactured for Arctic Cat and the raw materials purchased by Driveline to manufacture such goods pursuant to and in reliance upon the Supply Contract.

**Answer**: ARCTIC CAT denies the allegations in paragraph 23.

WHEREFORE, and by reason of the foregoing, ARCTIC CAT moves this Court for an Order dismissing Count II of plaintiff's Complaint and for the recovery of its costs.

### COUNT III

### Breach of Supply Contract for Specially Manufactured Goods

### Confidentiality Provision

1-23.   Driveline repeats and realleges Paragraphs 1 through 23 of Count II of its Complaint as Paragraphs 1-23 of this Count III of its Complaint as though fully set forth herein.

**Answer**:  ARCTIC CAT adopts and incorporates by reference its answers to paragraphs 1-23 of Count II as its answer to paragraphs 1-23 of this Count III.

24.     Driveline has invested significant resources and labor in the development of new specifications, methods, and processes relating to the manufacture of its goods.

**Answer**: ARCTIC CAT denies the allegations in paragraph 24.

25.     During the course of their business relationship Arctic Cat specifically requested that Driveline invest significant resources and labor in the development of new specifications, methods, and processes relating to the following goods: axles, outer tie-rods, inner tie-rods, shift shafts, and steering stops which have been manufactured by Driveline for Arctic Cat.

**Answer**: ARCTIC CAT denies the allegations in paragraph 25.

26.     Paragraph 3 of the Terms and Conditions of the Supply Contract provides that Arctic Cat will not disclose any materials, information, or knowledge that Arctic Cat received from Driveline regarding Driveline's products, methods, or manufacturing processes to any third party:

> "Confidential Information: Buyer shall not use or discharge to any person, firm, corporation, association or other third party any materials, information or knowledge Seller or its employees may disclose to Buyer concerning Seller's products, methods, or manufacturing process, or other information communicated to Buyer as proprietary and confidential, unless Buyer is authorized to do so in writing by an officer of Seller. Buyer shall make ever reasonable offer to insure that each of its employees who are involved in the performance of Buyer's obligations under this Agreement will abide by the non-use and confidentiality obligations as set forth in this paragraph." (Hereinafter referred to as "Confidentiality Provision".)

**Answer**: ARCTIC CAT denies the allegations in paragraph 26 and affirmatively states that the Supply Contract as defined by Plaintiff in paragraph 13 of the Complaint as Exhibit C hereto does not contain the above-referenced Confidentiality Provision.

27.     During the course of their business relationship Driveline delivered to Arctic Cat confidential information relating to its products, methods, and manufacturing processes subject to the Confidentiality Provision.

**Answer**: ARCTIC CAT denies the allegations in paragraph 27.

28.     Upon information and belief, without authorization from Driveline, Arctic Cat disclosed the confidential information received by Arctic Cat from Driveline to certain third parties in violation of the Confidentiality Provision.

**Answer**: ARCTIC CAT denies the allegations in paragraph 28.

29.     Any disclosure of the confidential information by Arctic Cat to a third party was without the consent of Driveline and constitutes a material breach of the Confidentiality

Provision within the Terms and Conditions and Supply Contract.

**Answer**: ARCTIC CAT denies the allegations in paragraph 29.

30.　　By reason of Arctic Cat's breach of the Confidentiality Provision within the Terms and Conditions and Supply Contract, Driveline has been damaged in an amount to be determined but in excess of $50,000.00 by reason of Arctic Cat's use and disclosure of the confidential information.

**Answer**: ARCTIC CAT denies the allegations in paragraph 30.

WHEREFORE, and by reason of the foregoing, ARCTIC CAT moves this Court for an Order dismissing Count III of plaintiff's Complaint and for the recovery of its costs.

## COUNT IV

### In the Alternative, Injunctive Relief for Breach of Confidentiality Provision

1-30.　　Driveline repeats and realleges Paragraphs 1 through 30 of Count III of its Complaint as Paragraphs 1-30 of this Count IV of its Complaint as though fully set forth herein.

**Answer**:　ARCTIC CAT adopts and incorporates by reference its answers to paragraphs 1-30 of Count III as its answer to paragraphs 1-30 of this Count IV.

31.　　The continued use by Arctic Cat of the confidential information without the consent of Driveline constitutes a breach of the Confidentiality Provision within the Terms and Conditions and Supply Contract and has caused Driveline irreparable harm and damages.

**Answer**: ARCTIC CAT denies the allegations in paragraph 31.

32.　　Driveline has suffered and will continue to suffer irreparable harm from the continued use by Arctic Cat of the confidential information in violation of the Confidentiality Provision, has no adequate remedy of law to enforce the Confidentiality Provision and to prevent Arctic Cat from the continued use of the confidential information.

**Answer**: ARCTIC CAT denies the allegations in paragraph 32.

WHEREFORE, and by reason of the foregoing, ARCTIC CAT moves this Court for an Order dismissing Count IV of plaintiff's Complaint and for the recovery of its costs.

### AFFIRMATIVE DEFENSES TO ALL COUNTS

1. The Complaint fails to state a claim upon which relief may be granted.

2. The Plaintiff's claims are barred, in whole or in part, by the doctrine of laches, accord and satisfaction, and release.

3. The Plaintiff's claims are barred by the applicable provisions of the Minnesota Uniform Commercial Code.

4. The Plaintiff's claims are barred by the doctrine of unclean hands.

5. The Plaintiff's claims are barred, in whole or in part, by its failure to take commercially reasonable steps to mitigate its own damages.

### **DEFENDANT DEMANDS TRIAL BY JURY**

ARCTIC CAT INC., a Minnesota corporation,
Defendant
By WILLIAMSMCCARTHY LLP


By: ___/s/ John J. Holevas_____

STATE OF ILLINOIS　　　　)
　　　　　　　　　　　　) SS.
COUNTY OF WINNEBAGO　　)

### VERIFICATION

　　Personally appeared before the undersigned Charles R. Hicks, Director of Supply Management of Arctic Cat Inc., a Minnesota corporation, who, after being duly sworn, deposes and on oath says that he is authorized to make this verification, on behalf of Arctic Cat Inc., a Minnesota corporation, and that the facts contained within the foregoing Answer are true and correct to the best of his knowledge, information and belief.

　　　　　　　　　　　　　　　Arctic Cat Inc., a Minnesota corporation

　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　Charles R. Hicks
　　　　　　　　　　　　　　　Director of Supply Management

Subscribed and sworn to before
me on July 30, 2008.

_____
Notary Public

"OFFICIAL SEAL"
DIANE K. GRIFFEY
Notary Public, State of Illinois
My Commission Expires 06/06/2011

Answer.wpd　　　　　　　　　　　　　　-11-

<u>CERTIFICATE OF LAWYER</u>

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, the undersigned certifies that on July 30, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

                                              /s/ John J. Holevas

John J. Holevas, Esq.  
Marc C. Gravino, Esq.  
WILLIAMSMCCARTHY LLP  
120 West State Street, Suite 400  
P.O. Box 219  
Rockford, IL 61105-0219  
815-987-8900